### CHESEBROUGH v. CONOVER.

(*Supreme Court, General Term, First Department.* February 11, 1891.)

WITNESS—CORRECTION OF TESTIMONY— NEW TRIAL.

> In a closely contested action the only witness, except the parties, while testifying for plaintiff, but not in response to any question asked, stated that defendant "would forge a man's name as soon as he would do anything else. " Before the close of the trial witness asked plaintiff's attorney to let him withdraw the statement, as it was made under great excitement, caused by what the witness considered a savage attack upon his character by defendant's counsel. This being refused him, witness, after the trial, sent a written retraction to defendant, who thereupon moved to have the verdict recovered by plaintiff set aside. *Held,* that the motion should have been granted.

Appeal from special term, New York county.

Action by Julius F. Chesebrough against Daniel D. Conover. There was verdict and judgment for plaintiff. Defendant now appeals from an order denying his motion to set aside the verdict made at special term upon affidavits.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Austin G. Fox,* for appellant. *Lewis Saunders,* for respondent.

BRADY, J. It appears from the record that this action was brought to recover for services rendered to the defendant at his request. His answer was a denial. The issue thus made was brought to trial in June, 1890, when the plaintiff testified to the rendition of the services at the plaintiff's request, and the defendant contradicted the statement thereto directly. The scale was thus apparently evenly balanced, and the only evidence given to turn it was that of Edward P. Phelps, who was sworn on behalf of the plaintiff. He was a material witness, it is said in the affidavit of the defendant, and his manner on the stand evidently impressed the jury. The whole of what he testified to we are not shown by the record, but it appears that upon cross-examination he was asked whether he had sent a telegram, which was exhibited to him, and answered, "I may have sent it." He was then asked, "Have you any doubt about it?" He said, "I don't know whether I have any doubt about it or not." And again, "What is your best recollection?" And the answer was, "Yes, coming through Mr. Conover's hands, I have a doubt about it." "Have you any reasonable doubt that you sent it?" "Yes," was the answer, "coming through his hands, I have. He would forge a man's name as soon as he would do anything else. May be he may have been at Albany and sent it." He was then asked a series of questions, but the object was to show that the answer in reference to Mr. Conover's readiness to forge a name was not responsive to any question asked him, and was a statement volunteered by him, both of which propositions he admitted. The trial lasted three days, and on the third day a verdict was rendered against the defendant and a judgment entered for $18,102.17. It also appears that within a few days thereafter, to-wit, on the 23d of June, 1890, Phelps, without the solicitation and to the surprise of the defendant, sent a letter to the latter, (a copy of which is set out in the record,) and in which he admits that in the evidence he gave in reference to the defendant he wrongfully charged him with a willingness to commit a heinous offense, and which charge, he said, "I now wholly retract, as I had not reason then to believe, and do not now believe, you

[meaning defendant] would do anything of the kind." He also stated that while under the influence of great excitement, caused by the savage attack of the defendant's lawyer upon him and his character, he said then what he had deeply regretted since it was uttered, and still further that he did not fully realize the nature and scope of his statement until he read it as reported in the following morning papers, and went at once to the court, and before the trial was concluded, to have the complaint withdrawn and the offense corrected accordingly, but that Mr. Saunders, the plaintiff's lawyer, would not let him do it, and therefore decided on writing directly to the defendant to make some reparation for the wrong he had made. The response made to this state of facts by the plaintiff is in an affidavit made by him, the purport of which is that Mr. Phelps, on the day succeeding that on which he gave his offense, was told that he was liable to be arrested and be sent to prison for what he said about the defendant, and that three or four days afterwards a Mr. Cozans had said to Phelps that the defendant had been to see him, and said that he was going to have Phelps arrested, but that he had received letters from various people, asking him not to have it done, and that under fear and threat of arrest Phelps and his son had drafted a letter to the defendant, which was submitted by Phelps to Cozans and left with him for revision, which was made, and that Phelps informed the plaintiff of all these facts. There is no denial, however, by Mr. Saunders of the statement of Mr. Phelps that he had refused to permit the latter, while the trial was in progress, to make the correction which he contemplated, and which he went to the court for the express purpose of making, and the fact that he did go to court for the purpose mentioned is wholly inconsistent with the statement made in the plaintiff's affidavit that three or four days afterwards Mr. Cozans communicated to the defendant his intention to have Phelps arrested, and that under that fear and threat Phelps had drafted the letter, to which reference has been made. This is so, for the reason, as we have seen, that Phelps appeared at the opening of the court on the day succeeding the day on which he gave his testimony, determined to withdraw the charge then in reference to the defendant's readiness to commit forgery, and in the proper way. There can be no doubt that in a closely contested case, as this appears to have been, Phelps' statement as originally made would have an effect upon the jury, an effect, indeed, undoubtedly prejudicial to his credibility; and there is no doubt either that when the application was made to Mr. Saunders for the opportunity to make the correction Mr. Phelps felt bound conscientiously to do he should have been permitted to do so, and the jury thus advised of the circumstances and the feeling which induced him to make the accusation. It is not necessary to resort to precedents to show that the right of explanation is one of grave importance, duly respected by the courts, and always allowed. It is well recognized in the ordinary proceedings of a trial. It is done *ex debito justitia*, and in many cases in which I have presided, and in which witnesses have sought to explain their testimony, it has never been refused. It is true that in the case of *People* v. *McGuire*, 2 Hun, 269, an affidavit made by a person who was a witness on the trial, and in which he admitted having committed perjury, was disregarded, but for the reasons that when his affidavit was made it was quite evident no latitude of indulgence would justify the belief that he was then truthful; that he might have been so on the trial, but when his affidavit was made he certainly was not so. And more particularly for the reason that his evidence in the case was substantially the same as that given by another witness, who, at the time of the occurrences testified to, was similarly employed, and of whose truthfulness no reason appeared for doubt. But that case was entirely different from this. There was no application there to correct the evidence given made during the trial. Aside from that, the testimony of the witness in that case went to the main issue. Here the charge against the plaintiff was collateral, was not responsive to any ques-

tion asked, and was expressed under great excitement, caused by what the witness considered to be a savage attack upon him and his character; and what he said was an opinion seriously affecting the defendant's integrity, springing from the feeling of resentment or indignation, and therefore impulsive and wrong. It may be that if the application which was made to vacate the judgment and for a new trial did not present the impressive fact that the witness sought the counsel of the plaintiff on the day following the utterance of the testimony to correct his error, the application might, in the exercise of a sound discretion, have been denied, but with that fact uncontradicted the administration of justice seems to demand a new trial. It is clearly the duty of counsel to develop the truth in all controversies so far as may be, and undoubtedly to give the witnesses called on behalf of their clients an opportunity during a trial to correct any statement made while under examination as a witness. The order appealed from should, for these reasons, be reversed, with $10 costs and disbursements, and the motion granted.

All concur.